UNITED STATES of America, Plaintiff,

v.

William C. JENNINGS, Sr.,
et al., Defendants.

No. CR 89-0-52.

United States District Court,
D. Nebraska.

March 13, 1990.

Michael P. Norris, Asst. U.S. Atty., Oma-
ha, Neb., for plaintiff.

Donald W. Kleine, Michael J. Poepsel, Omaha, Neb., for defendants.

## ORDER

CAMBRIDGE, District Judge.

This matter is before the Court on the magistrate's findings and recommendations (Filing No. 44). No objections to such findings and recommendations have been filed as allowed by 28 U.S.C. § 636(b)(1)(C) and Local Rule 49(B).

The Court has reviewed the findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 49(B), and finds that they should be adopted.

IT THEREFORE IS ORDERED:

1. That the magistrate's findings and recommendations are adopted;

2. That defendant William C. Jennings, Sr.'s motion to dismiss (Filing No. 39) is granted for violation of the Speedy Trial Act, but otherwise denied on his claim that his sixth amendment speedy trial rights were violated.

3. That this action is dismissed, without prejudice, as against defendant William C. Jennings, Sr. for violation of the Speedy Trial Act.

## MAGISTRATE'S FINDINGS AND RECOMMENDATIONS

RICHARD G. KOPF, United States Magistrate Judge.

Presented to me is the motion to dismiss by William C. Jennings, Sr. (filing 39). The defendant raises two arguments. First, the defendant argues that this case must be dismissed because the defendant has not been brought to trial within the time provided in the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. Second, the defendant argues that the matter must be dismissed for lack of a speedy trial under the sixth amendment to the Constitution. I agree with the defendant as to the first argument, but I will recommend dismissal without prejudice. I disagree with the defendant as to the second argument, and I will recommend that the motion be denied on this basis.

## I. FACTS

First, the facts are undisputed, and most of them may be found in plaintiff's exhibit 1 (filing 43, Pl's Exh. 1) which is a narrative statement of the facts. I adopt plaintiff's exhibit 1 as the essential statement of the facts and supplement that exhibit only as necessary.

The government concedes, Government's Brief in Opposition to Defendant's Motion to Dismiss at 6–7, and I find by making separate calculations by reference to the docket sheet (filing 43, Pl's Exh. 3), that seventy-seven days elapsed between the time of arraignment and the time the motion to dismiss was filed, after considering all time explicitly excluded by the court in previous orders.

Jennings, Sr. and his son, William C. Jennings, Jr., were indicted in this court on April 21, 1989 on a two-count indictment essentially charging unlawful distribution of "speed" in violation of 21 U.S.C. § 841(a)(1) and use of a weapon during the commission of a drug crime in violation of 18 U.S.C. § 924(c). It is undisputed that Jennings, Sr. was charged with nearly identical crimes in state court on December 19, 1988. It is also undisputed that the state charges were voluntarily dismissed on April 10, 1989. It is undisputed that there were no delays caused by Jennings, Sr. in the prosecution of the state charges before the state government moved to dismiss.

## II. LAW

### A. THE ACT WAS VIOLATED

The Speedy Trial Act provides that the trial of a defendant charged in an information or indictment shall commence within seventy days of the filing date of the indictment, or from the date the defendant first appears before a judicial officer where such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). As indicated above, the speedy trial clock has run on the government unless there is some period of time, not previously considered by the court, which should be excludable under the Act pursuant to one or more of the

exclusions listed in 18 U.S.C. § 3161(h). The government requests that I look at five different time frames.

■ First, the government asks me to look at the time between May 16, 1989 and May 26, 1989 and exclude the time as if the defendant had filed a motion for discovery under Federal Rule of Criminal Procedure 16, triggering the exclusion under the Act found at 3161(h)(1)(F), dealing with delay resulting from the filing of a defense pretrial motion. The government argues that the issuance of the court's standard progression order (filing 5), which gave the parties ten days to accomplish the automatic discovery provided for in Rule 16, in essence amounted to the filing of a defense motion. I do not agree.

Rule 16 by its express terms may be invoked by a simple "request" and need not be invoked by motion. Fed.R.Crim.P. 16(a). Moreover, if Rule 16 is invoked it benefits the government also because the government obtains reciprocal discovery pursuant to the terms of the Rule. Fed.R.Crim.P. 16(b). The purpose of telling the parties to confer about Rule 16 in the progression order within ten days is to establish a measuring point from which the court may assume the parties should be prepared to file motions. The court is obligated to set a motion date pursuant to Federal Rule of Criminal Procedure 12(c). The court essentially instructs defense counsel that counsel has ten days to invoke Rule 16. Thus the court gives the parties ten days to confer about Rule 16 and ten days thereafter to file motions. The first ten-day provision in the progression order does not amount to the filing of a court-ordered defense motion, rather it simply provides both the defense and the government with ten days to engage in Rule 16 discovery, if that is what is desired.

■ The second period of time that the government points to is the time between May 16, 1989 and June 4, 1989. Both defendants appeared for arraignment on May 16, 1989, and Mr. Kleine, Jennings, Sr.'s lawyer, appeared for both defendants, noting that Mr. McKenney would enter his appearance for Jennings, Jr. I instructed

McKenney to file his appearance, which he did on June 5, 1989. The government contends in essence that Jennings, Jr. had filed a motion to present a delayed appearance of counsel, and accordingly since Jennings, Sr. was not severed from Jennings, Jr. the time is also excludable for Jennings, Sr. pursuant to 18 U.S.C. § 3161(h)(1)(F) & (h)(7). I disagree.

The delayed appearance of counsel for Jennings, Jr. did not, at least on the record before me, delay the proceedings in any way. On the record before me there was no indication that the government was delayed in any way. The government did not object to proceeding with the arraignment of both defendants, and the government did not object to the issuance of the progression order regarding both defendants. The impact of adopting the government's argument would be to essentially hold that Jennings, Jr. had not been arraigned, and the record will not support such a conclusion. As a consequence, I find no basis to construe the actions of counsel for Jennings, Jr. as the equivalent of some type of pretrial motion.

■ The third period of time asserted as excludable by the government is the three-day period between June 20, 1989 and June 22, 1989. I agree with the government that this time period should be excludable.

On June 5, 1989 both parties requested additional time to file pretrial motions, and the request was granted allowing the parties to file their motions by June 19, 1989. No motion was filed until June 23, 1989 when both parties filed a motion asking for additional time, which motion was granted. By delaying the filing of the second motion for additional time the defendants "wasted" three days and yet obtained additional time to file pretrial motions three days later by filing a motion out of time. Accordingly, it is appropriate to charge the defendants with these three days as if they had filed a timely motion. 18 U.S.C. § 3161(h)(1)(F).

■ The fourth period of time suggested as excludable by the government is the time between September 6, 1989 and Sep-

tember 19, 1989. On August 29, 1989 I ordered the government to disclose the identity of an informant and to provide the informant for interview by counsel; I gave the government eleven days to comply. At the request of the defense counsel the informant was made available on September 19, 1989. On October 23, 1989 the government filed a motion for continuance of trial asking that trial be continued until on or after November 6, 1989 on the basis that one of the government's witnesses was not available. The government requested that the time be excludable from the time of the filing of the motion to the time set for trial, or, alternatively, that the time between September 6, 1989 and September 19, 1989 be deemed excludable. I granted the motion on the representation that it was not objected to, and excluded the time between October 23, 1989 and November 6, 1989. (Filing 38). There was no timely objection to this order by any party. The government now argues that I could have also excluded the time between September 6, 1989 and September 19, 1989, in the interests of justice under 18 U.S.C. § 3161(h)(8)(A).

While I agree that at the time of the government's motion I could have granted, in my discretion, a § 3161(h)(8)(A) exclusion, the government did not ask me to make both times—October 23, 1989 through November 6, 1989 or September 6, 1989 through September 19, 1989—excludable; I gave the government the relief it sought. Moreover, in retrospect I see no reason to exclude the time between September 6, 1989 and September 19, 1989, because the defendants had been asking for disclosure of the informant since their motion on June 23, 1989. I had excluded the time between June 23, 1989 and September 6, 1989. I ordered that the informant be disclosed on August 29, 1989. As a consequence, the government had plenty of excludable time to prepare for the eventuality that I might order disclosure of the government's informant. Accordingly, I do not believe that the time between September 6, 1989 and September 19, 1989 should have been deemed excludable.

Finally, the government argues that the time between November 7th through November 14, 1989 should be excluded because the Assistant United States Attorney (AUSA) was trying a criminal case before Chief Judge Strom and he failed to request a continuance because he believed that Jennings, Sr. would accept a plea bargain. While I agree with government's counsel, a diligent, bright, and hard-working lawyer, that his conduct was not in bad faith in this regard, I cannot agree that his failure to request a continuance should be excused. There is no indication in the record that counsel for Jennings, Sr., an equally capable lawyer, lulled the government into an unfair sense of security to take advantage of the Speedy Trial Act. And, most importantly, the government fails to point out under what provision of the Act I could rely upon to grant a retroactive exclusion. Accordingly, I do not find this period of time excludable.

In conclusion, I find that as of the time of the filing of the motion to dismiss the speedy trial clock had run against the government in that seventy-four days had elapsed in violation of the seventy days to trial provision of 18 U.S.C. § 3161(c)(1).

## B. WITHOUT PREJUDICE

18 U.S.C. § 3162(a)(2) provides that the court, upon a violation of the Act, must consider and determine whether the dismissal should be with or without prejudice, and the court must examine three factors, "among others," to make such a determination. The three explicit factors are: (1) the seriousness of the offense; (2) the facts and circumstances of the case which lead to dismissal; and (3) the impact of a reprosecution on the administration of the Act and on the administration of justice. This type of analysis requires a careful balancing of the explicit factors as well as other factors, such as whether the defendant suffered "prejudice," together with a written "explication" of its reasons for selecting the remedy. *United States v. Taylor*, 487 U.S. 326, 332–37, 108 S.Ct. 2413, 2417–20, 101 L.Ed.2d 297 (1988).

First, there is no evidence in the record that the defendant suffered any actual prejudice. The defendant was always on bond and thus suffered no significant pretrial incarceration. There is no evidence that any witnesses or other evidence was "lost." There is no suggestion that the delay was as a result of an effort by the government to secure some sort of tactical advantage.

Jennings, Sr. does point out that there were pending state charges which were dropped and soon thereafter these federal charges were filed. The defendant suggests some illicit motive without telling me what the improper motive was regarding the filing of state charges, the dismissal of state charges, and the subsequent filing of similar federal charges. Certainly more time was taken up by the filing of the state charges, but there is no evidence in the record that the delay in state court benefited the federal government in any way. Although a good deal of time had run on the state charges when they were dismissed, it is not contended that the state speedy trial time had run against state government. At most there is counsel's suggestion that there was some type of improper state-federal collusion, but there is no evidence upon which to base any such conclusion.

Apparently the asserted relevance of the state charges is that the defendant suggests that the approximate one hundred and twelve days spent in state court should be attributed to the government for the purpose of proving prejudice, but the defendant does not tell me why. The defendant fails to cite any pertinent authority for the proposition that a delay in a state court proceeding can or should be attributed to the federal government in a subsequent federal prosecution for the purpose of proving the specific period of delay under the Act. In this case the specific period of delay is about four days—not one hundred and eleven days plus four. But I will consider the delay in the state court proceeding to the extent it might tend to amplify the general anxiety that any defendant suffers while a criminal proceeding is pending. However, since there is no showing of any particular manifestation of anxiety in this case, such as physical or emotional distress, I cannot conclude that defendant has suffered any significant prejudice.

Finding no significant prejudice, I turn next to the first explicit factor considered by the Act—the seriousness of the charged offense. Without doubt a drug crime alleging the sale of a drug coupled with a use of a weapon during the course of the drug crime is a serious offense. The Supreme Court has said as much in the case of a person charged only with the possession of drugs with the intent to sell them. *Id.* at 336, 108 S.Ct. at 2419. Count I in this case carried a term of incarceration of up to twenty years and a fine of up to one million dollars. Count II carried a mandatory term of imprisonment of five years *consecutive* to any sentence on Count I. The charged conduct was very serious.

The second explicit factor deals with the reasons for dismissal. This prong in essence seems to focus upon the conduct of the Government. *Id.* In this case there is no evidence of bad faith on the part of the government and there is no showing of a pattern of neglect on the part of the Assistant United States Attorney or the United State's Attorney's office in general. The reason for the time limitations under the Act running in this case is largely because the defendant sought to determine whether the government would accept a plea to the drug charge in exchange for a dismissal of the weapons charge. On November 6, 1989, when the time under the Act had not yet run, but when this case was set for trial,[1] these plea negotiations were being discussed. The evidence is undisputed that the United States Attorney for the District of Nebraska had to determine whether such a plea offer was consistent with the

---

1. The clock did not run out until about November 12, 1989. The motion to dismiss was filed on November 16, 1989. The last work day before the expiration of the clock was November 10, 1989, a regular jury session day for the district judge assigned the case.

policy of the Justice Department, and this required consultation with the Justice Department in Washington. The Assistant United States Attorney handling this case was trying another one at about this same time.

Thus, about the same time, the following things happened: the case was set for trial on November 6, 1989 (there was no violation of the Act at this time), defendant through his counsel evidently solicited a plea offer from the government, the United States Attorney's office consulted with the Justice Department in Washington to determine whether such an offer could be made, there was a determination by the Justice Department that such an offer was authorized, the offer to the defendant was made, the Assistant United States Attorney handling this case was in a jury trial in another criminal case before Chief Judge Strom, the offer was refused by the defendant, and the clock ran out before a jury could be selected. While there is no reason to believe the defendant or his counsel misled the government, there is also no reason to believe that the government was doing anything other than pursuing in good faith plea negotiations, at least partially at the request of the defendant, as the clock ran out. Accordingly, I do not believe that the second explicit factor weighs in favor of dismissal with prejudice.

■■■ The third factor has to do with the impact that reprosecution will have on the administration of the Act and the administration of justice. As I understand this factor it forces the court to attempt to determine whether reprosecution would frustrate the purposes of the Act.

It is helpful first to understand that while dismissal with prejudice serves an educational function so does dismissal without prejudice. As Justice Blackmun pointed out in *Taylor, id.* at 342, 108 S.Ct. at 2422, there are many burdens forced upon the government when a dismissal takes

place without prejudice, such as being put to the time and expense of seeking a new indictment and exposure to statute of limitations defenses. Moreover, the court may impose sanctions upon an offending government lawyer, while dismissing without prejudice. *Id.* at 342 n. 14, 108 S.Ct. at 2422 n. 14.[2] Thus even dismissal with prejudice is a serious setback to the government, and can serve an educational function.

I note the following as particularly significant to me in the balancing process. The government did not act in bad faith and the government did not obtain a tactical advantage by the delay. The case was set for trial prior to the speedy trial time running, and at least part of the reason for the time running out was a joint effort of the parties to negotiate a plea. Moreover, there is no showing of any significant prejudice suffered by the defendant. Still further, the time limit in this case was exceeded by only four days and this time standing alone is not so great as to mandate dismissal with prejudice. *See id.* at 343, 108 S.Ct. at 2423. The offense is serious. The conduct of the government does not represent a pattern or practice of abuse of the Act.

Accordingly, I will recommend that dismissal take place, but without prejudice.

### C. CONSTITUTIONAL RIGHT NOT VIOLATED

On sixth amendment grounds, Jennings, Sr. also moves for dismissal for the reason that he claims he was denied his constitutional right to a speedy trial. I disagree.

■■■ The defendant is not clear whether he argues about preindictment delay, postindictment delay, or both. The legal standards differ in the constitutional context depending upon the type of delay alleged. On a claim of preindictment delay the defendant must prove actual prejudice. *United States v. Bartlett,* 794 F.2d 1285, 1289–90 (8th Cir.), *cert. denied,* 479 U.S.

---

**2.** In this case I make the explicit findings that no such sanctions should be imposed. The AUSA handling this case has demonstrated in this case and in others that he is capable, conscientious, and straightforward. The same may be said of the office of the United States Attorney for the District of Nebraska.

934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986). If the defendant is speaking of postindictment delay then the court must look at the four-factor test set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These four factors are (1) the length of delay, (2) the reason for the delay, (3) whether defendant asserted his speedy trial rights, and, (4) whether defendant suffered possible prejudice. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. "Prejudice" under *Barker* is determined by examining three factors: (1) whether the defendant suffered pretrial incarceration, (2) whether the defendant suffered anxiety, and (3) whether the defense of the defendant may have been impaired by the delay. *Id.* at 530 & n. 30, 92 S.Ct. at 2192 & n. 30. Based upon the foregoing legal standards and relying upon the previous discussions in this memorandum, Jennings, Sr. was not denied his constitutional right to a speedy trial, despite the fact that there was a violation of the Speedy Trial Act.[3]

IT IS RECOMMENDED to Judge Cambridge:

1. The motion (filing 39) be granted as provided herein, and otherwise be denied; and

2. This action be dismissed, without prejudice, for a violation of the Speedy Trial Act, but not because the defendant's sixth amendment speedy trial rights were violated.

DATED this 12th day of January, 1990.

**3.** For the same reasons as stated in the text I find, although not raised by defendant, that dismissal under Federal Rule of Criminal Procedure 48(b) is not required.